UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cr. No. 15-214 MV |
| | ) |
| **GERALD JAMES VIARRIAL**, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES' SENTENCING MEMORANDUM AND
MOTION FOR UPWARD VARIANCE/DEPARTURE**

The United States hereby submits its sentencing memorandum and motion for an upward variance/departure. Specifically, the United States is asking for a sentence of 240 months of incarceration. As grounds therefore, the United States provides the following:

PROCEDURAL HISTORY

On January 21, 2015, a federal grand jury returned a seven-count indictment charging defendant with three counts of Assault with a Dangerous Weapon, two counts of Abuse or Abandonment of a Child, one count of Using, Carrying, Possessing and Brandishing a Firearm During and in Relation to and in Furtherance of a Crime, and one count of Assault Resulting in Serious Bodily Injury. Doc. 2. After a three-day trial, a jury returned a verdict of guilty on all three counts of Assault with a Dangerous Weapon, the single count of Using, Carrying, Possessing and Brandishing a Firearm During and in Relation to and in Furtherance of a Crime, and one count of Assault Resulting in Serious Bodily Injury. Doc. 95.

On November 22, 2016, the United States Probation Office submitted a presentence report (PSR), calculating defendant's offense level to be 31 and his criminal history category to be I, resulting in a guideline imprisonment range of 108 to 120 months, which is the statutory

maximum for counts 1, 2, 3, and 6. PSR ¶ 139. Inclusion of the 84-month statutory minimum for the firearm brandishing charge in count 5 results in a total guideline range of 192 to 204 months of incarceration. *Id*. The United States has as reviewed the PSR and has no objection to the facts, calculations, or analysis contained therein.

ARGUMENT

While the United States Sentencing Guidelines are advisory, the Sentencing Reform Act requires a court to impose sentences that "reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, [and] protect the public." *Id.* at *24. A court must also craft a sentence that "afford[s] adequate deterrence to criminal conduct and protect[s] the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B) and (C). The Advisory Guidelines provide for departures where "there exists an aggravating or mitigating circumstance . . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines . . . ." U.S.S.G. § 5K2.0.

To the extent the Court can consider a departure, given the statutory maximum for the assault counts, the United States asserts that this case warrants an increase of 36-months from the high-end of defendant's total guideline range as an upward variance. This Court has the authority to vary from the guidelines sentence based on factors contained in 18 U.S.C. § 3553(a) including 18 U.S.C. § 3553(a)(2)(A)(to reflect seriousness of the offense). Moreover, the multiple counts in the indictment can be sentenced concurrently and/or the 84 months for count 5 is merely the statutory minimum, and this Court is well within its authority to impose and additional 36-months to the 84-month minimum for defendant's brandishing of a firearm.

I.      The Instant Offense

Simply put, the egregious nature and circumstances of this offense support a sentence of

240 months. During the summer of 2010, defendant lined up his family of eight in a remote field on the Pojoaque Indian Reservation and walked up and down the line threating to kill them with a handgun. Jane Doe held their baby as he screamed to them that they were worthless and that he should kill them all. Rather than supporting and caring for his children and intimate partner, defendant regularly terrorized and abused his family. Defendant brutally exerted his power over the victims in order to control their day-to-day lives. The offense conduct described in PSR ¶¶ 8-24 is replete with defendant's cruel and disturbing criminal conduct. Defendant deliberately and repeatedly told his family that he would kill them or that he would have someone else kill them if they dared to report his abuse. PSR ¶ 10. John Doe 2 stated that his father would kill them if defendant had to spend one day in jail. PSR ¶ 14. Defendant also taunted and threated to kill Jane Doe. PSR ¶¶ 15-16. Defendant had numerous firearms around his home, which not only made his threats viable, it made the victims' fear of being murdered very real.   No intimate partner nor child, should ever have to endure threats to their lives by their own intimate partner and father.

John Doe 1, John Doe 2, E.V., and Jane Doe testified at trial. They described how they were lined up on that summer day in 2010. They testified that defendant took them out to go target shooting and that he became angry and lined them up and pointed a handgun at them. John Doe 2 testified that defendant told them that he should shoot them all and that they were worthless. John Doe 2 testified that he thought he was going to die and that defendant threatened to kill them all the time. John Doe 2 also testified that he saw his father strangle his older brother after being angry with him. E.V. also testified that she saw her father pointing the gun at her mother and brothers. E.V. testified that she was afraid. She also saw defendant strangle her older brother with one hand. E.V. testified that she was afraid not only for herself, but also for her older brother. E.V. testified that defendant also punched her in the stomach with his fist and that

he hit her little brother. E.V. further testified that her father had numerous firearms all over his house and that she was afraid to tell anyone what was happening to her family because of her father's threats to kill them all. The testimony of E.V. was not disputed and there should be no question that these events occurred.

In addition to the homicidal threats, defendant regularly threatened to shoot and kill himself. PSR ¶ 13. Defendant manipulated the victims, telling them that if he did it would be their fault if he killed himself. *Id.* Defendant told John Doe 1 to act up so he could shoot John Doe 1 when defendant killed himself. *Id*. John Doe 1 remembers defendant's handgun on the bed when defendant threatened him. *Id*. At trial, Defendant testified and took no responsibility for his actions.  Instead, he blamed his intimate partner and his children for his criminal legal problems. He also stated that the guns located in his own home, were not his but his intimate partner's guns.

The United States asks this Court to consider the impact of defendant's criminal conduct and abuse as aggravating circumstances. Defendant made sure the victims understood the power dynamic. He was in control. He had all the power. Defendant threatened the victims and told him he would kill them if they reported him. Defendant's criminal conduct stopped only after John Doe 1, tired of being abused and seeing his family hurt, mustered the courage and rode out on horseback to report his father. But for John Doe 1's courageous acts, this case may have never come to light.

Understandably the victims have suffered as a result of defendant's extreme criminal conduct. Defendant's assaults and abuse traumatized the victims. The family notes that since defendant has been incarcerated, they have been able to move forward with their lives. PSR ¶ 26. The United States asks this court to impose a 240-month sentence because it will permit the

family to gain some stability and allow them to move forward. Such a sentence would do more to protect the victims from future crimes of the defendant by allowing the children to grow up. John Doe 2 noted that their father told them that if he ever went to jail, defendant would come back and kill them. PSR ¶ 14. Defendant's criminal conduct was egregious and the family is afraid.

PSR ¶ 160 examines application of § 5K2.3 (Extreme Psychological Injury) and § 5K2.8 (Extreme Conduct). Defendant's abuse was pervasive and his assaults were deliberate, violent and terrifying. The PSR writer noted that defendant's conduct was extreme. The United States agrees and asks the Court to consider this extreme conduct as an aggravating circumstance warranting a variance. In addition to the egregious nature of the instant offense, defendant forced his young children to live and labor in unfit conditions. Defendant did not provide food or a safe place for the children. John Doe 1 reported that he and John Doe 2 would hide food to feed to younger children. Their clothing and bedding was full of rat feces. Defendant's abuse was not only cruel, it was deliberate. When Jane Doe would bring good, healthy food to her children, Defendant would give that food to the dogs and make his children eat rotten tamales. Defendant assaulted Jane Doe on numerous occasions in front of his children. Defendant forced Jane Doe to purchase his firearms in her name. There are numerous other instances of defendant's shocking conduct described in PSR ¶ 60. Defendant's criminal conduct traumatized his family. Even after defendant was found guilty at trial, he continued to harass Jane Doe and her children. PSR ¶¶ 21-23. To date, defendant refuses to accept responsibility for his criminal conduct. PSR ¶ 25. Defendant's conduct is indeed extreme and he has no remorse. These are aggravating circumstances that support a sentence of 240 months.

II. Defendant's Criminal History and Characteristics

Defendant has an extensive criminal history that spans from 1980 to 2014 as described in

PSR ¶¶ 66-72 and 77-89. Almost all of defendant's criminal history arises out of tribal arrests and convictions. As such, defendant was assessed a criminal history score of zero and a criminal history category of I. PSR ¶¶ 73-74. The United States submits that defendant's criminal history category of I underrepresents defendant's past criminal conduct. Although tribal convictions are not to be included in defendant's initial criminal history calculation, this Court is permitted to consider these tribal convictions if there is "reliable information indicat[ing] that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." *United States v. Lonjose*, 42 F. App'x 177, 180 (10th Cir. 2002) (unpublished)(*quoting* U.S.S.G. § 4A1.3(a)).

The Tenth Circuit in *United States v. Benally,* held that a district court can consider a defendant's prior tribal court convictions in sentencing on a later federal conviction, despite the fact that such tribal court convictions were uncounseled and resulted in prison time. *United States v. Benally*, 756 F.2d 773, 779 (10th Cir. 1985). The Tenth Circuit's holding was premised on the fact that such tribal convictions are valid at their inception because "Indian tribes are quasi-sovereign nations and ... the protections of the Constitution do not apply to tribal actions brought against Indians in tribal courts." *Id.* Pursuant to *Benally,* the district court had the discretion, consistent with the Constitution, to enhance defendant's sentence based on his tribal court convictions. *Lonjose*, 42 F. App'x 177, 180–81.

Defendant has seven adult criminal convictions for Carrying a Concealed Weapon, Disorderly Conduct, Resisting Arrest, Public Nuisance, Malicious Mischief, Assault on an Officer, Attempting Escape, Battery and Public Intoxication. ¶¶ 66-72. Defendant has been arrested numerous times for Assault, Criminal Damage to Property, Assault and Battery, Criminal Damage, Possession of Marijuana, Disorderly Conduct, Disobedience of Lawful Order,

Murder, Assault with Intent to Commit Murder, Assault on a Federal Officer, Criminal Negligence, Domestic Violence, and charges related to Threatening Elected or Appointed Officials at the Pueblo of Pojoaque. PSR ¶¶ 77-89. Defendant has a history of committing violent assaults, which were not limited to his intimate partners. Defendant's criminal history demonstrates that he readily turns to violence. Aside from the instant offense, there are approximately thirteen charges related to assault, battery, or domestic violence. PSR ¶¶ 71,72, 77-79, 83-88.   This criminal history warrants consideration by the Court, since the PSR does not give it any weight in determining Defendant's guideline range.

      The Tenth Circuit has clearly stated that the Court is well within its discretion to consider the facts of these crimes under the 18 U.S.C. § 3553(a) factors. *See generally United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005) (noting that "[n]o limitation" should "be placed on the information concerning the background, character, and conduct of a person ... for the purpose of imposing an appropriate sentence"). Given defendant's characteristics and history, a sentence of 240 months is appropriate.

      III.    The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Provide Adequate Deterrence, and Protect the Public from Further Crimes of the Defendant

      A sentence of 240 months reflects the serious nature of defendant's criminal conduct. Imposing such a sentence is necessary to provide adequate deterrence and to protect the public from further crimes of the defendant. Defendant's criminal history demonstrates that he has had numerous encounters with the criminal justice system and these encounters have not persuaded him to comply with the law. The Court can observe that the number of defendant's past arrests legitimately suggest a pattern of unlawful behavior even in the absence of convictions. *United States v. Zapete-Garcia*, 447 F.3d 57, 61 (1st Cir. 2006). Accordingly, a sentence of 240 months

would promote respect for the law, provide just punishment, provide for adequate deterrence, and most significantly, protect the public from any future crimes of defendant. Given the egregious nature of the instant offense, the extreme conduct and aggravating circumstances, and the number of victims, defendant's criminal conduct warrants a sentence of 240 months.

## CONCLUSION

WHEREFORE, the United States respectfully requests that defendant be sentenced to 240 months of incarceration.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

*Electronically filed on 01/09/2017*
KYLE T. NAYBACK
NOVALINE D. WILSON
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that I electronically filed
the foregoing with the Clerk of the Court
using the CM/ECF system which will send
notification to defense counsel.

    */s/*
KYLE T. NAYBACK
Assistant United States Attorney